AMERICAN COTTON CO-OP. ASS'N *v.* UNION COMPRESS & WAREHOUSE CO.

(In Banc. April 13, 1942. Suggestion of Error Overruled June 8, 1942.)

[7 So. (2d) 537. No. 34943.]

44

Flowers, Brown & Hester, of Jackson, and Engle & Laub, of Natchez, for appellant.

46

**Brandon & Brandon,** of Natchez, for appellee.

52

Argued orally by **J. T. Brown,** for appellant, and by **Gerard Brandon,** for appellee.

**Smith, C. J.,** delivered the opinion of the court.

The appellant brought this action against the appellee, a warehouseman, for the recovery of damages sustained

by it because of the appellee's failure to comply with Section 3491, Code of 1930.

The appellant is a Delaware corporation and its right to recover was challenged by a special plea alleging that it had failed to file its charter with the Mississippi Secretary of State, as required by Section 4164, Code of 1930, which section requires "every company or corporation for profit incorporated under or by virtue of the laws of any government, or of any other state or territory, now or hereafter doing business in this state" to file a copy of its charter with the Secretary of State, and in default thereof "shall be liable to a fine of not less than $100.00." A replication by the appellant to this plea denies that it is a "corporation for profit," and alleges that it was organized pursuant to the provisions of an Act of Congress approved February 18, 1922, 42 Stat. 388, 7 U. S. C. A., secs. 291, 292, entitled "an act to authorize the formation of associations of producers of agricultural products . . . for the sole purpose of providing central marketing facilities and sales services to the growers of cotton in Mississippi and other states of the South."

"All of its common stock and all of its preferred stock is owned exclusively by Regional and State Co-operative Cotton Associations whose methods of business and form of organization comply with the provisions of the Act of Congress approved February 18, 1922, hereinabove referred to.

"No individual, firm or corporation other than such Co-operative Cotton Marketing Associations is eligible to become a stockholder in the plaintiff corporation.

"The issuance of preferred stock, as provided in the amendment to the Charter Exhibit "B" hereto, was authorized for the purpose of affording a means to provide finances for the operation of the plaintiff's affairs by the United States of America, Farm Credit Administration.

"All of the funds used in connection with the financing of plaintiff's operations are furnished and advanced by

the United States of America, Farm Credit Administration.

"To facilitate such advances the issuance of preferred stock, as provided in the amendment to the plaintiff's charter, Exhibit "B" hereto, was authorized.

"Each and every share of this preferred stock is issued to Co-operative Cotton Marketing Associations whose methods of business and form of organization comply with the provisions of the Act of Congress approved February 18th, 1922, entitled 'An Act to Authorize the Formation of Associations of Producers of Agricultural Products.' The ownership of stock in plaintiff, either common or preferred, is limited strictly to such associations.

"As and when the preferred stock is issued it is in turn by such Co-operative Cotton Marketing Associations pledged to the United States of America, Farm Credit Administration, for the purpose of securing funds with which to pay for the same, all of said funds being in turn paid over to the plaintiff corporation for use by it in connection with its operations.

"In no other way and in no other manner are the operations of the plaintiff financed.

"The plaintiff can make no profit from its operations in that the net proceeds of all cotton handled by it, after the expense of operation has been paid, is returned to the producers through the medium of the Regional and State Co-operative Cotton Marketing Associations holding stock in the plaintiff corporation, and this association has never made any profit nor received any profit."

The copy of the appellant's charter filed with the replication discloses that it was authorized to issue 25 shares of common stock of a par value of $100 each and "299,975 shares of 5% non-cumulative preferred stock of a par value of $100.00 each." The common stock alone to possess stockholder voting power and to be issued only to cooperative marketing associations "whose

method of business and form of organization comply with the provisions of the Act of Congress approved February 18, 1922, entitled 'An act to authorize association of producers of agricultural products' and not more than one share of common stock shall ever be issued or owned by any such association.''

It thus appears from this replication that the appellee itself derives no profit from its activities that inure to the benefit of its stockholders in the shape of dividends on its stock owned by them and while it appears from the appellant's charter that it is authorized to pay not exceeding a five percent dividend on its preferred stock, it is clear from the allegations of the replication that this preferred stock is simply for use in borrowing money from a governmental agency for use by the appellant in the prosecution of the purpose of its organization. It is true that the stockholders of the appellant's constituent cooperative cotton marketing associations may, because of the appellant's activities, be enabled to obtain a higher price for cotton produced by them than they otherwise would. But this is not the character of profit contemplated by Section 4164, Code of 1930. The purpose for which the appellant and its constituent cooperative associations were organized was not to earn dividends for their stockholders, but, as set forth in Section 4083, Code of 1930, and in effect in Section 1141J, 12 U. S. C. A., ''to promote the general welfare of agriculture; to enable producers of agricultural products whether in the state of Mississippi or not to co-operate in the productions, processing, packing, distribution, financing and marketing of agricultural products, and the elimination of speculation and waste therein.'' Which section also designates such corporations as being ''not for profit but for service to their members,'' as also does Section 6 of an amendment to the appellant's charter. No error was committed in overruling the demurrer to this replication.

After the demurrer was overruled the case was submitted to the court below for decision without the jury on

a stipulation of facts, which sets forth in substance that: The appellee is a warehouseman doing business at Natchez, Mississippi, and engaged, among other things, in storing cotton in bales and issuing negotiable warehouse receipts therefor. It was the duty of its chief clerk, H. E. Avery, to cancel these negotiable receipts when they were surrendered and the cotton represented thereby was delivered to the holder of the receipts. All of the appellant's business in Mississippi was transacted through its only Mississippi stockholder and agent, the Mississippi Co-Operative Cotton Association and its agents. J. R. Haley was the Natchez agent of the Mississippi corporation and through it of the appellant, and attended to the appellant's business of making advances of money to the stockholders of the Mississippi corporation on negotiable warehouse receipts for cotton delivered by them to him or in purchasing these receipts outright. When the money was advanced on these warehouse receipts, the producer of the cotton delivering them signed a marketing agreement setting forth the relative rights of the producer and the appellant therein; and the receipts and agreement were forwarded by Haley to the Mississippi corporation's Jackson, Mississippi, office. Avery and Haley agreed with each other, and without the knowledge of their principals, that Avery would not cancel all of the negotiable receipts for cotton issued by the appellee when the cotton represented thereby was delivered to the holder of the receipts, but that he would deliver some of these receipts to Haley, who would use them in obtaining an advancement of money thereon from the appellant by means of forged marketing agreements. Negotiable receipts issued by the appellee for about 164 bales of cotton were thus dealt with and a sum of money aggregating something over $5,000 was obtained by Haley from the appellant thereon in the usual manner in which he conducted the appellant's regular business.

A judgment was rendered dismissing the appellant's

action. The appellee's contentions in support of this judgment are in substance:

(1) The appellant's declaration predicates its right to recover upon alleged negligence of the appellee in not canceling these receipts when the cotton represented thereby was delivered to the holders thereof and no negligence of the appellee in this connection appears for the reason that it "had no previous notice of the unfitness or criminal nature of its employee Avery."

(2) Avery was acting for himself and therefore withdrew for that purpose from the appellee's employment when he delivered these uncanceled receipts to Haley.

(3) The knowledge of the appellant's agent Haley that the cotton represented by these uncanceled receipts had been delivered to the holders thereof must be imputed to the appellant.

(4) The failure of Avery to cancel these receipts and the delivery of them by him to Haley was not the proximate cause of the damage sustained by the appellant but the proximate cause thereof was the act of its own agent Haley in obtaining money from it on these receipts.

Section 3491 of the Code imposes an absolute duty on a warehouseman who has delivered goods for which he has issued a negotiable receipt to "take up and cancel the receipt." He must do both and in default of either the section imposes absolute liability on him "to any one who purchases for value in good faith such receipt, for failure to deliver the goods to him." This duty is nondelegable and a warehouseman can not escape its obligation by delegating its performance to another. His liability arises when his agent whom he has charged with the performance of the duty fails to do so, to the damage of an innocent purchaser of the receipts, although the agent's omission to discharge the duty was negligent, wilful or criminal. 4 Rest. Torts, Sec. 877 clause (d) and comment (e) thereon; 1 Rest. Agency, Sec. 214. This rule is illustrated by the many cases in this court dealing

with the master's duty to provide his servant with a safe place to work, and by Joy v. Farmers' National Bank, 158 Okl. 1, 11 P. (2d) 1074, wherein a statute similar to Section 3491, Code of 1930, was under consideration.

It is true that Avery violated his duty to the appellee when he delivered these receipts to Haley for purposes of his own, but that fact cannot relieve the appellee from liability for the nonperformance of its non-delegable duty to cancel the receipts when the cotton represented by them was delivered to the holders thereof.

Since Haley in negotiating these receipts to the appellant, his principal, was acting adversely to it and entirely for his own and Avery's purposes, pursuant to a scheme entered into by them to defraud the appellant, it is not chargeable with Haley's knowledge of the fact that the cotton represented by these receipts had been delivered by the appellee to the holder thereof. 1 Rest. Agency, Sec. 282. One of the numerous cases in this state so holding is Scott County Milling Co. v. Powers, 112 Miss. 798, 73 So. 792.

No question of proximate cause arises under Section 3491, Code of 1930, for the liability imposed thereby is absolute and arises when a warehouseman, or his agent charged by him with carrying out the provisions of the statute, fails to obey its command resulting in receipts that should have been canceled getting into the hands of an innocent purchaser thereof.

We are not presented with a case in which a warehouseman or his agent exercised due care to cancel negotiable certificates issued by the warehouseman and the failure so to do resulted from no fault of the warehouseman or his agent, and we express no opinion thereon.

Reversed, and judgment here for the appellant.