31116. PEOPLES WAREHOUSE COMPANY *et al.* v. COMMERCIAL BANK & TRUST COMPANY.

68

DECIDED JULY 5, 1946.

*Christopher & Futral,* for plaintiffs in error.
*Beck, Goodrich & Beck,* contra.

MacIntyre, J.   A negotiable warehouse receipt under the Uniform Warehouse Receipts Act is defined as "A receipt in which it is stated that the goods received will be delivered to the bearer or to the order of any person named in such receipt is a negotiable receipt."   One of the receipts here in question is as follows:

"PEOPLES BONDED WAREHOUSE

Griffin, Georgia.

| License | PEOPLES WAREHOUSE COMPANY | Receipt and |
| Number | Proprietor | Tag |
| 2-127 | | No. 26584 |

Licensed and Bonded under the United States Warehouse Act

Original . . Negotiable

Warehouse Receipt

For One Bale of Cotton

Received from A. H. Huckaby of . . For storage in course of interstate or foreign commerce, the One Bale of Cotton described herein, stored in the above-named warehouse, for which this receipt is issued subject to the United States Warehouse Act, the regulations for cotton warehouses thereunder, and the terms of this contract, said cotton is fully insured by the undersigned warehouseman against loss or damages by fire or lightning, said cotton is accepted for storage for one year only from the date of this receipt, but upon surrender by the holder this receipt may be extended or a new receipt issued as provided in said regulations, the undersigned warehouseman is not the owner of the cotton covered by this receipt, either solely, jointly, or in common with others, unless otherwise stated herein, upon the return of this receipt properly endorsed and the payment of all charges and liabilities due the undersigned warehouseman, as stated herein, said One Bale of Cotton will be delivered to the above-named depositor or his order.

Issued at Griffin, Georgia, on 10-28-40.

| Weight determined by a weigher | PEOPLES WAREHOUSE |
| licensed under the U. S. Ware- | COMPANY |
| house Act. | Licensed Warehouseman |
| | By: J. W. Hayes |

The undersigned warehouseman claims a lien on said cotton for charges and liabilities as follows:  Receiving, weighing, storage,

and insurance for first month or fractional part . . ; Storage and insurance each additional month or fractional part . . ; Reweighing . . ; Delivering . . ; Misc. . .

|  |  |
|---|---|
| Marks . . | Grade St. L. |
| No. Lyons | Staple 1" |
| Weight 448 | Condition . . |

The issuance of a fraudulent receipt, or illegal conversion or removal of the cotton represented by this receipt, is punishable by a $10,000.00 fine, or imprisonment for ten years, or both.

[Endorsements on back]

A. H. Huckaby."

The other receipts are in the same form except for the depositor of the cotton in whose name the receipt was issued, and for the description of the cotton. The United States Warehouse Act (U. S. C. A., Title 7, Ch. 10, § 262), provides: "A warehouseman conducting a warehouse licensed under this chapter, in the absence of some lawful excuse, shall, without unnecessary delay, deliver the agricultural products stored therein upon a demand made either by the holder of a receipt for such agricultural products or by the depositor thereof, if such demand be accompanied with (a) an offer to satisfy the warehouseman's lien; (b) an offer to surrender the receipt, if negotiable, with such indorsements as would be necessary for the negotiation of the receipt; and (c) a readiness and willingness to sign, when the products are delivered, an acknowledgment that they have been delivered if such signature is requested by the warehouseman." Section 263 provides: "A warehouseman conducting a warehouse licensed under this chapter shall plainly cancel upon the face thereof each receipt returned to him upon the delivery by him of the agricultural products for which the receipt was issued." Regulations for Cotton Warehouses, reissued as amended August 1938, Reg. 4, § 1, paragraph 1, provides: "Every receipt, whether negotiable or non-negotiable, issued for cotton stored in a licensed warehouse shall, in addition to complying with requirements of section 18 of the act, embody within its written or printed terms the following: . . (g) the words 'Not negotiable,' or 'Negotiable,' according to the nature of the receipt, clearly and conspicuously printed or stamped thereon." Section 1, paragraph 2 of the same regulation is as follows: "Every receipt, whether negotiable or non-negotiable, issued for cotton stored in a

licensed warehouse shall specify a period, not exceeding 1 year, for which the cotton is accepted for storage under the act and these regulations, but, upon demand and the surrender of the old receipt by the lawful holder thereof at or before the expiration of the specified period, the warehouseman, so far as the available capacity of his warehouse then permits and upon such lawful terms and conditions as may be granted by him at such time to other depositors of cotton in the warehouse shall, if he then continue to act as a licensed warehouseman, either extend the old receipt by making an appropriate notation thereon or issue a new receipt for a further specified period not exceeding 1 year. Further extension of the storage period may be made annually by appropriate endorsement or by issuing a new receipt, provided it is first determined by the warehouseman that the cotton has not deteriorated and if it has that proper notation of the changed condition be made on the receipt, and provided the warehouseman's license is still in effect." It might be noted that paragraph 2 of such regulation states: "Every receipt, whether negotiable or non-negotiable, issued for cotton stored in a licensed warehouse shall specify a period, not exceeding 1 year, for which the cotton is accepted for storage under the act and these regulations." Thus, we think that the insertion of this 1-year clause in the warehouse receipt does not necessarily make the receipt non-negotiable. It should be further noted that paragraph 1 of such regulations states that every receipt, whether negotiable or non-negotiable, shall have conspicuously printed or stamped thereon, according to the nature of the receipt, the words "Negotiable," or "Not negotiable," and that this receipt had printed thereon "Negotiable." What is the meaning of these requirements in such regulations, that there shall be conspicuously printed or stamped thereon the words "Negotiable," or "Not negotiable?" We think that the regulation meant, if the receipt was so stamped "Negotiable," that it was in legal effect negotiable as respects the warehouseman if the holder of the receipt purchased it for value supposing it to be negotiable, even though as respecting any party to the transaction other than the warehouseman, it might not be negotiable. Lynn Storage Warehouse Co. v. Senator, 3 Fed. 2d, 558. Under the Georgia law, as well as under the Uniform Warehouse Receipts Act, even if the warehouseman fails to stamp a licensed public warehouse receipt "Negotiable," or "Not negoti-

able," the receipt is a negotiable one, and while neither of these laws is necessarily controlling here, we are somewhat reassured, in our interpretation of the United States Warehouse Act in question and the regulations issued thereunder, by the similarity of the United States Warehouse Act in certain of its aspects to the Georgia statutes and the Uniform Warehouse Receipts Act and the decisions interpreting them. See, in this connection, Code (Ann. Supp.), §§ 111-406, 111-410, 111-438, 111-441, 111-9907.

There is an attack upon the negotiability of the warehouse receipts here, based upon the idea that they recited that the cotton was accepted for storage for one year from the date of the receipts; that they were transferred more than one year after they were dated; and that the receipts were overdue, and therefore not negotiable. The receipts were transferred one year and three months after they were dated. We do not see why, under these circumstances, the insertion of the one-year clause should impair the warehouse receipts as respects the warehouseman if the holder purchased them for value supposing them to be negotiable, even if, as respects any party to the transaction other than the warehouseman, they would not be negotiable. The provision in the receipts, relied upon by the defendant, was inserted for the benefit of the warehouseman, and the mere fact that they were outstanding three months beyond the one-year period, which is only a little longer than the warehouseman contracted to keep the cotton, did not cast suspicion upon the receipts. We do not think that the case can be assimilated to that of a past-due note because the regulation permitted or required the one-year clause, and also required the marking of the note "Negotiable" or "Not negotiable," and the warehouseman had marked and issued the receipts as negotiable. This is especially true where it was conspicuously printed on the receipt given by the warehouseman that the receipt was negotiable, notwithstanding the one-year clause inserted therein. If the warehouseman had the cotton, he should have delivered it; if he delivered it to another without obeying the mandate of § 263 of the Federal statute, supra, that he should plainly cancel upon the face thereof each receipt returned to him upon the delivery by him of the cotton for which the receipt was given, this was a violation of a duty required by law. The plaintiff had the right to presume that the law had been complied with, and when the plaintiff bought the uncancelled receipts in good

faith, it had not, under the allegations of the petition, failed to exercise due care. American Cooperative Association v. Union Compress &c. Co., 193 Miss. 43 (7 So. 2d, 537, 139 A. L. R. 1483).

Ground 2 of the general demurrer as argued is that there is no allegation showing that the cotton receipts were ever endorsed by W. E. Glass, the person from whom it is alleged the plaintiff acquired the same, or that the cotton receipts were negotiated to the plaintiff bank by anyone prior to the transfer to the bank. The petition alleges: "6. That on the 8th day of May, 1944, the plaintiff presented said receipts properly endorsed, to the Peoples Bonded Warehouse-Peoples Warehouse Company, proprietors, and demanded the delivery of said thirteen (13) bales of cotton to themselves, and offered to surrender said receipts with such endorsements as necessary for the negotiation of the receipts and offered to pay and satisfy the warehouseman's lien on said cotton and when said cotton was delivered to sign an acknowledgment that said cotton had been delivered, if said signature was required, all as provided by law. The defendant, the Peoples Bonded Warehouse-Peoples Warehouse Company, proprietors, failed and refused to deliver said cotton on surrender of the receipts therefor, or pay the plaintiff the value therefor." We think that the petition substantially complies with the provisions of the Federal statute, § 262, supra, using almost the very words. The cases cited in the brief of the plaintiff in error are distinguishable by their facts from the instant case. We do not think that ground 2 of the demurrer is meritorious for the reasons urged. See, in this connection, Code, § 111-441.

The judge did not err in overruling the demurrer.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*