17858

COBLE DAIRY PRODUCTS COOPERATIVE, INC., Appellant, v. Otis W. LIVINGSTON, James A. Calhoun, Jr., James W. Crain, Francis M. Pinckney, James H. Sullivan, constituting The South Carolina Tax Commission, Respondents.

(123 S. E. (2d) 301)

*Messrs. J. E. Belser, Jr.,* and *Harold C. Seigler,* of Columbia, *for Appellant,*

*James M. Windham, Esq., Assistant Attorney General,* of Columbia, *for Respondents,*

December 14, 1961.

Moss, Justice.

Coble Dairy Products Cooperative, Inc., the appellant herein, brought this action against the members of the South Carolina Tax Commission, the respondents herein, under Section 65-2661 *et seq.,* as amended, Code of 1952, to recover certain license taxes with interest thereon, which appellant paid under protest. The case was heard in the Court below upon the pleadings, the facts not being in dispute. From an order awarding judgment in favor of the South Carolina Tax Commission, the appellant has appealed.

The appellant is a corporation organized under the laws of the State of North Carolina as a nonprofit cooperative marketing association. This corporation was domesticated in South Carolina on October 8, 1954. Coble Dairy Products, Inc. was a business corporation organized for profit, and on April 21, 1955, merged with the appellant. Thereafter, Coble Dairy Products, Inc. ceased to exist, having paid its license tax in South Carolina through the year 1955.

It is admitted that the appellant has producer members residing in South Carolina in excess of ninety-three in number. These South Carolina producers pool their raw milk, process it in South Carolina in plants operated by the appellant, and the net profits are returned to the South Carolina producer members. The appellant has invested in South Carolina the sum of $934,855.55, of a total company wide investment of $3,497,402.71.

The appellant, for the years 1956, 1957 and 1958, paid an annual license fee of $10.00 as provided for in Section 12-912 of the 1952 Code of Laws of South Carolina. The South Carolina Tax Commission did, on May 14, 1958,

assess against the appellant an additional corporate license tax for said years in the total amount of $2,854.30, asserting that it did so pursuant to Section 65-621 *et seq.*, of the 1952 Code of Laws of South Carolina. It is the position of the appellant that Section 65-621 *et seq.*, of the Code, as amended, properly construed, do not permit the levying of a license tax against a nonprofit corporation since such was not organized to make a profit for the corporation, as such, or for their members, as such, but only for their members as producers. It is the position of the appellant that since it is a nonprofit cooperative marketing association, the South Carolina Tax Commission has no power to require it to pay the same license tax imposed solely upon corporations organized to do business for profit. The question for determination is whether, under the admitted facts, the appellant is required to pay corporate license taxes for the years in question as a foreign corporation, as is prescribed by Section 65-621 *et seq.*, of the 1952 Code of Laws, as amended.

The General Assembly of this State, at its 1953 Session, enacted into law Act No. 242, 48 Stat. 301, entitled: "An Act To Amend Sections 65-601 Through 65-616 Of Chapter 9 Of Title 65, Code Of Laws Of South Carolina, 1952, Relating To Annual Reports And License Fees. Of Corporations, So As To Change The Method Of Computing Such License Fees; And To Repeal Sections 12-1, 12-2, 12-2.1, 12-2.2, 12-732 and 12-732.1, Code Of Laws Of South Carolina, 1952, Relating To Annual Reports Required Of Corporations." This Act became effective on and after January 1, 1955, and appears in the 1953 Cumulative Supplement to the 1952 Code of Laws of South Carolina as Section 65-621, and provides as follows:

"Every corporation organized under the laws of this [State] to do business for profit, doing business in this State or using a portion of its capital or owning, maintaining or operating one or more establishments or plants in this State, and every corporation organized to do business for profit under the laws of any other state, territory or

country, doing business in this State or using a portion of its capital in this State, or owning, maintaining or operating one or more establishments or plants in this State, shall, in addition to any and all other requirements of law, make a report annually to the Commission on or before the last day of March in such form as may be prescribed by the * * * Commission, containing such information and facts as the * * * Commission may require for the administration of the provisions of this chapter."

The South Carolina Tax Commission required the appellant, pursuant to Section 65-621 of the 1953 Cumulative Supplement to the Code, to file an annual report for the years 1956, 1957 and 1958, and such reports revealed the amount of capital invested in South Carolina; and pursuant to Section 65-625 of the 1953 Cumulative Supplement to the Code, the South Carolina Tax Commission imposed a license tax of one mill upon the capital stock invested in South Carolina.

Section 65-621 above quoted requires every corporation organized under the laws of this State and every corporation organized under the laws of any other State to do business within this State "for profit" to file an annual report, and Section 65-625 imposes a license tax of one mill upon the capital stock of such corporations without distinction as to whether such is a domestic or a foreign corporation. It is perfectly apparent that the one mill license tax is only assessable when the corporation, whether domestic or foreign, is doing business in this State "for profit".

The General Assembly of this State, at its 1959 Session, amended Act No. 242, Section 65-621 of the 1953 Cumulative Supplement to the Code, by deleting the words "for profit" as applicable to foreign corporations. 51 Stat. 357. However, this amendment has no effect upon the legality of the assessment made against the appellant by the South Carolina Tax Commission.

A tax statute is not to be extended beyond the clear import of its language, and any substantial doubt as to its meaning is to be resolved in favor of the taxpayer. *Colonial Life & Accident Ins. Co. v. South Carolina Tax Commission,* 233 S. C. 129, 103 S. E. (2d) 908.

The appellant was organized under the North Carolina "Co-operative Marketing Act" and it was provided in said North Carolina Act, G.S. § 54-130, that:

"Associations organized hereunder shall be deemed nonprofit, inasmuch as they are not organized to make profit for themselves, as such, or for their members, as such, but only for their members as producers."

This is the same provision as is contained in our statute, Section 12-902 of the 1952 Code. The principal objective, therefore, of a cooperative is to increase returns to its members as producers of agricultural commodities. The cooperative, as a legal entity, does not in a legal sense make a profit on the produce marketed for its members. In the case of *Yakima Fruit Growers Association v. Henneford,* 182 Wash. 437, 47 P. (2d) 831, 833, 100 A. L. R. 435, it appears that corporations were organized by certain fruit growers for the purpose of cooperatively marketing their fruits. An action was brought by one of these corporations to enjoin the enforcement of a statute imposing a privilege tax. From a lower Court decision granting the injunction, the Tax Commission of the State of Washington appealed. In affirming the judgment of the lower Court, the Supreme Court of the State of Washington said:

"* * * We see no reason for holding that, because a large number of producers, most of whom are not what would be called large producers, cause a corporation to be organized for the purpose of assisting them in the production, packing, warehousing, and sale, they should not be on the same basis as a producer individually, whether large or small, or two or more persons co-operating together by joint enterprise rather than by corporate entity. The fact

that they operate through a corporate entity in which they own the stock and the corporation makes no profit and distributes the proceeds after a sale and the payment of the expenses on a pro rata per box basis does not put them in a materially different situation than if two or more of them cooperated simply as members of a joint undertaking without corporate existence. The fact that a certain percentage of the members of the corporation are not producers, owing to the fact that they had sold their orchard land, is merely incidental, and is not of controlling importance. In any reasonable sense, the respondents, as corporations, are not engaged in business for profit, and, in fact, they do not make any. * * *"

In *American Cotton Co-op. Association v. Union Compress & Warehouse Co.*, 193 Miss. 43, 7 So. (2d) 537, 538, 139 A. L. R. 1483, it was held that an agricultural cooperative association organized under the act of Congress, 7U.S.C.A. §§ 291, 292, authorizing the formation of such associations for the sole purpose of providing marketing facilities and sales services to growers of cotton, is not a "corporation for profit," within the meaning of a state statute requiring such corporations to file copies of their charters with the secretary of state, where the association, the stock of which is owned exclusively by regional and state cooperative associations, itself derives no profit from its activities, and in fact is expressly referred to in the act of Congress as being "not for profit," and, although it is authorized to pay dividends on its preferred stock, this stock is simply for use in borrowing money from a governmental agency. See also the cases of *Burley Tobacco Grower's Co-op. Association v. Rogers*, 88 Ind. App. 469, 150 N. E. 384; *City of Owensboro v. Dark Tobacco Growers' Association*, 222 Ky. 164 300 S. W. 350, and *Georgia Milk Producers Confederation v. City of Atlanta*, 185 Ga. 192, 194 S. E. 181:

> We think that a proper construction of Section 65-621, of the 1953 Cumulative Supplement to the Code, requiring domestic and foreign corporations to file an

annual report, applies only to corporations organized "for profit". Section 65-625 only requires the imposition of a license tax of one mill upon the capital stock of domestic and foreign corporations organized "for profit". Since the appellant is a nonprofit cooperative marketing association, we do not think the cited sections of the Code have application to it because it is not a "corporation for profit" within the meaning of these sections. The respondents, therefore, were without authority to require the filing of annual reports and to assess a license tax against the appellant.

We conclude that the assessment of license taxes against the appellant, under Section 65-621 *et seq.*, of the 1953 Cumulative Supplement to the Code, was improper, and the appellant is entitled to a refund of the amount of such license taxes and interest thereon.

Reversed.

. TAYLOR, C. J., OXNER and LEGGE, JJ., and THOMAS P. BUSSEY, Acting Justice, concur.